UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:10-CV-151-BR

STEVEN GLENN: JOHNSON )
)
      Plaintiff, )
)
v. ) ORDER
)
SCOTT E. THOMAS, et al., )
)
      Defendants. )

This matter is before the court on the 2 February 2011 declaration and request of plaintiff Steven Glenn: Johnson ("plaintiff") to proceed in forma pauperis and for an extension of the time to serve defendants. (DE # 8.) Plaintiff's motion for preliminary injunction (DE # 6) is also before the court.

## I. BACKGROUND

Plaintiff is proceeding in this action *pro se*. On 20 October 2010, plaintiff filed his complaint against 49 defendants, including state and county governmental employees, officials, and entities, and several private attorneys. (DE # 1.) Plaintiff paid the $350 filing fee at the time that he filed the complaint. (Id.) On 20 October 2010, he also filed a motion for a temporary restraining order, which the court denied. (DE ## 2, 5.) On 5 November 2010, plaintiff filed a motion for preliminary injunction. (DE # 6.)

On the same day that plaintiff filed his complaint, the Clerk of Court issued a summons against each of the defendants. However, none of the 49 defendants have been served or have appeared in this case. On 2 February 2011, instead of filing proof of service, plaintiff filed the instant request for leave to proceed in forma pauperis and for an extension of time to serve the

defendants. (DE # 8.) Plaintiff also asked the court to order the United States Marshal to serve the defendants with his complaint. (Id.)

Plaintiff was not incarcerated at the time that he filed his complaint. (See Compl., DE # 1, ¶ 155 ("Steven-Glenn is presently in custody but released on bail in each of the several criminal prosecutions set out above . . . .").) At some point between the time that he filed his complaint and the time that he filed his request for in forma pauperis status, plaintiff apparently became incarcerated at a state correctional facility. (See Decl. & Req. to Proceed In Forma Pauperis, DE # 8, at 1, 3.) Plaintiff asserts that he has been rendered indigent due to his current incarceration and that, as a result, he cannot afford to pay the costs of serving the defendants in this action. (Id. at 1.)

## II. DISCUSSION

The court first notes that this case is not subject to the screening requirements of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A, because plaintiff was not a prisoner at the time he brought his lawsuit. See 28 U.S.C. § 1915A(a), (c);[1] Michau v. Charleston County, S.C., 434 F.3d 725, 727 (4th Cir. 2006); Witzke v. Femal, 376 F.3d 744, 750 (7th Cir. 2004) (when deciding whether an individual is a prisoner within the meaning of the PLRA, a court "must look to the status of the plaintiff at the time he brings his suit").

Although plaintiff has already paid the filing fee necessary to commence this action (DE # 1), he has nonetheless requested that the court grant him in forma pauperis status so that the United States Marshal may help him effectuate service. The procedure for proceeding in forma

---

[1] Section 1915A(c) defines the term "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c) (emphasis added).

pauperis is governed by 28 U.S.C. § 1915.  In support of his request, plaintiff has submitted a "declaration" that includes a statement of his income, his monthly expenses, his assets, and the amount of deposits made to his prison trust fund account for the past six months.[2]  In addition, it appears that plaintiff has three dependents - his wife and two children.  (Decl. & Req. to Proceed In Forma Pauperis, DE # 8, at 2, ¶ 6.)

The current federal poverty guideline for a four-person household is $22,350.  See Annual Update of the Department of Health and Human Services Poverty Guidelines, 76 Fed. Reg. 3637 (Jan. 20, 2011).  The information provided in plaintiff's declaration with respect to his income is somewhat imprecise because he was self-employed prior to his incarceration.  Nonetheless, it appears that his level of income over the twelve months prior to his request for in forma pauperis status was very close to the federal poverty guideline.  (Decl. & Req. to Proceed In Forma Pauperis, DE # 8, at 2, ¶ 3.)  Furthermore, plaintiff's monthly expenses appear to slightly exceed the level of his income.  (Id.)  Plaintiff does not have a checking or savings account, and he does not own a home or a vehicle.  (Id. ¶¶ 4-5.)  A plaintiff does not have to be absolutely destitute in order to enjoy the benefit of the in forma pauperis statute.  See Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948).  Here, plaintiff has sufficiently

---

[2] Although plaintiff has set forth the total amount of deposits made to his prison trust fund account between the date of his incarceration (which appears to have been on or around 19 November 2010) and the date that he filed his request for in forma pauperis status, he was not obligated to do so under the in forma pauperis statute.  The relevant statutory section provides:
>  A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

28 U.S.C. § 1915(a)(2) (emphases added).  As previously mentioned, plaintiff was not a prisoner at the time he brought his action in October 2010, and he paid the $350 filing fee at that time.

demonstrated his poverty, and his request for in forma pauperis status is GRANTED.

However, where a plaintiff has obtained leave to proceed in forma pauperis, the court must also conduct a review of the plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2). Under this statute, a district court must dismiss all or any part of an action found to be frivolous or malicious, which fails to state a claim upon which relief can be granted, or which seeks money damages from a defendant immune from such recovery. See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); Michau, 434 F.3d at 728; Cochran v. Morris, 73 F.3d 1310, 1315-16 (4th Cir. 1996) (discussing *sua sponte* dismissal under predecessor statute 28 U.S.C. § 1915(d)). A case is frivolous if it lacks an arguable basis in either law or fact. See Neitzke v. Williams, 490 U.S. 319, 325 (1989). In addition, in order to state a claim on which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555. While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions. Id.[3]

---

[3] Although the court in Iqbal was addressing pleading standards in the procedural context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court finds that those standards also apply in the court's initial screening of a complaint pursuant to § 1915(e)(2)(B), since Iqbal discusses the general pleading standards of Rule 8, which apply in all civil actions. Iqbal, 129 S. Ct. at 1949-51. Moreover, § 1915(e)(2)(B)(ii) permits *sua sponte* dismissal of a complaint that fails to state a claim upon which relief can be granted, which is essentially the same standard found in Rule 12(b)(6). See McLean v. United States, 566 F.3d 391, 396 (4th Cir. 2009) ("When the word 'dismissed' is coupled with the words '[for] fail[ure] to state a claim upon which relief may be granted,' the complete phrase has a well-established legal meaning." (alterations in original)). In addition, several Courts of Appeal have applied Twombly's plausibility standard to dismissals under 28 U.S.C. § 1915(e)(2)(B)(ii). See, e.g., Brown v. City of Pittsburgh, 325 Fed. Appx. 57, 59 (3d Cir. 2009); Hall v. Sec'y for Dep't of Corr., 304 Fed. Appx. 848, 849 (11th Cir. 2008); Killebrew v. St. Vincent Health, Inc., 295 Fed. Appx. 808, 810 (7th Cir. 2008); Garza v. Bandy, 293 Fed. Appx. 565, 566 (10th Cir. 2008); Bray v. Young, 261 Fed. Appx. 765, 767 (5th Cir. 2008).

Here, plaintiff is proceeding *pro se*. Pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by attorneys. See Haines v. Kerner, 404 U.S. 519, 520 (1972). This court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. See id.; Estelle v. Gamble, 429 U.S. 97, 106 (1976); Noble v. Barnett, 24 F.3d 582, 587 n.6 (4th Cir. 1994).

In this case, plaintiff has filed a 59-page complaint with 31 separate claims against 49 defendants, including state and county governmental employees, officials, and entities, and several private attorneys. The precise nature of some of plaintiff's claims is unclear. Plaintiff makes a general allegation that he is proceeding pursuant to 18 U.S.C. §§ 4, 241, 242, 1961-1968 and 42 U.S.C. §§ 1983, 1985(2), 1985(3), 1986, 1988. (Compl. ¶ 66.) He summarizes the myriad of injuries that he has suffered as follows:

> Plaintiff/Petitioner Steven-Glenn, by the actions and lack of action of the [defendants] has been injured by unlawful arrest, restraint, unlawful trespass, seizure of his person and property, posed with excessive bail, the expense of the excessive bail to a bail bondsman, put under various fraudulent bonds, suffered cruel and unusual punishment by being denied insulin and/or proper carbohydrates to maintain health as a juvenile Type I Diabetic, put under coercion, put under duress, denied the right to a speedy trial in one case, denied the right to counsel of choice, with no choice of counsel among lawfully sworn attorneys at law, entry [of] a plea against his will and over his objection, assaulted and battered by unsworn persons without a weapon while suffering unlawful detention, assaulted and battered by unsworn persons with a weapon while being faced with unlawful arrest or, otherwise, kidnapped, conspired against to extort funds by all [defendants], victimized through abuse of process, obstruction of justice, unlawful seizing of an automobile without a warrant, denial of use of same property, unlawful seizing or stealing of a state issued license plate, unlawful seizing or stealing of a motorcycle without a warrant, denial of use of same property, denial of due process, denial of his right to purge civil contempt charges and jailed for the same, denial of equal protection under the law by virtue of the fact that all [defendants] fail to hold office for which they have under taken [sic] the duties, public defamation of character, humiliation, undue burden of time to deal with charges disallowing the means to provide for himself and his family, as well as, excessive emotional stress and trauma.

(Compl. ¶ 143.)

Although it is difficult to unravel plaintiff's scrambled allegations, what is clear from the face of the complaint is that plaintiff's claims are united by the common allegation that the individual defendants have failed to "take, subscribe and file in the proper office the oath of office found in Article VI, Section 7 of the North Carolina Constitution." (Compl. ¶ 58.) Because all of the individual defendants have allegedly failed to take and/or file the oath of office, plaintiff insists that these defendants are barred from occupying their offices, that they are subject to the criminal penalties found in N.C. Gen. Stat. § 14-229, and that their actions are not lawful. (Id. ¶¶ 60, 70, 74, 83, 89, 100, 118, 121, 141, 166.) Plaintiff alleges that because he has challenged the authority of the individual defendants, they have "conspired to further compound the injuries to the Petitioner's rights and make a remedy unavailable to him, drown him in litigation and defame his character as a partial cover up and diversion to Defendant's [sic]/Respondents' own criminal activities." (Id. ¶ 61.) Plaintiff also alleges that his "liberty continues to be in immediate and further peril due to the ongoing acts of Defendant's [sic] illicitly proceeding criminally against Steven-Glenn while the defendants have failed to take the prescribed oath required by the North Carolina Constitution thus prosecuting Steven-Glenn under color of law with no authority at law." (Id. ¶ 156.)

Plaintiff's claims suffer from numerous defects, not all of which are necessary to detail here. First, plaintiff's contention that the defendants did not have the authority to take action against him is legally baseless. Even if the court assumes, without deciding, that the individual defendants have failed to take and/or file the oath of office, plaintiff's argument is still without merit. "[F]ailure to take an oath of office, while it might subject one exercising the duties of the

6

office to a penalty, . . . , would not deprive his acts of the validity given those of de facto officers performing the duties of a de jure office." Vance S. Harrington & Co. v. Renner, 72 S.E.2d 838, 842 (N.C. 1952); see also State v. Porter, 158 S.E.2d 626, 627 (N.C. 1968) ("[A] person is a *de facto* officer where the duties of the office were exercised 'under color of a known and valid appointment or election, but where the officer failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like.'" (citation omitted)); Lee v. Martin, 118 S.E. 914, 918 (N.C. 1923), modified, 123 S.E. 631 (N.C. 1924) (The oath of office is "simply [an officer's] promise to be faithful to the government and to his office, which assurance is binding on his conscience . . . ; but the failure to take the oath does not release the incumbent of an office, whether merely de facto or de jure, from liability for his official acts." (citation omitted)); Kings Mountain Bd. of Educ. v. N.C. State Bd. of Educ., 583 S.E.2d 629, 635 (N.C. Ct. App. 2003) ("*De facto* status arises where a person assumes office under *color* of authority or where one exercises the duties of the office so long or under such circumstances as to raise a presumption of his right; in which cases his necessary official acts are valid as to the public and third persons[.]" (emphasis in original; citation and internal quotation marks omitted)). Thus, contrary to plaintiff's assertions, the alleged failure of the individual defendants to take and/or file the oath of office does not in and of itself render their actions against him invalid.

Most, if not all, of plaintiff's claims hinge on his allegation that the individual defendants do not have a perfected oath of office. For example, plaintiff's mail fraud claims, which he appears to assert as predicate acts for his civil claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, are based on the mailing of allegedly fraudulent indictments by the Clerks of Court at issue. (See Compl. ¶¶ 76, 92.)

7

Plaintiff maintains that the indictments are fraudulent because the grand jurors, including the forepersons, and the Clerks of Court failed to take the proper oath of office. (Id. ¶¶ 75, 77-78, 91, 93-94.) However, because plaintiff cannot demonstrate that the Clerks of Court or the grand jurors lacked the legal authority to take action against him, he cannot show that they committed fraud. See United States v. Vinyard, 266 F.3d 320, 326 (4th Cir. 2001) (The elements of a mail fraud claim are "(1) the existence of a scheme to defraud, and (2) the mailing of a letter, etc., for the purposes of executing the scheme." (citation and internal quotation marks omitted)). As a result, plaintiff's claims for mail fraud cannot withstand scrutiny.[4]

Furthermore, several of plaintiff's claims are based on alleged violations of three federal criminal statutes, 18 U.S.C. §§ 4, 241, and 242. (See Compl. ¶¶ 69, 70, 71, 142.) However, none of the criminal statutes upon which plaintiff relies authorize a private cause of action. See Shahin v. Darling, 606 F. Supp. 2d 525, 538 (D. Del. 2009) (dismissing civil claims brought by plaintiff pursuant to 18 U.S.C. §§ 241 and 242 because neither criminal statute authorizes a private cause of action); Massad v. Greaves, 554 F. Supp. 2d 163, 166 (D. Conn. 2008) ("federal criminal statutes cannot provide plaintiff with an implied civil cause of action to plead"); Pankey v. Webster, 816 F. Supp. 553, 559 (W.D. Mo. 1993) (finding that "18 U.S.C. § 4 defines a criminal offense and does not provide civil complainants with a private right of action"). Rather, the decision of whether to prosecute under these statutes, and what criminal charges to bring,

---

[4] The court notes that all of plaintiff's RICO claims also fail for other reasons. Although plaintiff does not specify the subsection(s) of 18 U.S.C. § 1962 that he is attempting to proceed under, each of the subsections requires a showing of a "pattern of racketeering activity." See 18 U.S.C. § 1962(a)-(d); Professionals, Inc. v. Berry, 923 F.2d 849 (Table), No. 90-3005, 1991 WL 5940, at *1 (4th Cir. Jan. 25, 1991). Here, plaintiff has not demonstrated a pattern of racketeering activity with sufficient specificity. See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 505 (4th Cir. 1998) (a plaintiff must allege a continuing pattern and a relationship among the defendant's activities showing they had the same or similar purposes).

generally rests with the prosecutor. Shahin, 606 F. Supp. 2d at 538. In addition, plaintiff has not provided any facts from which the court could reasonably conclude that any of the defendants committed the crimes defined by 18 U.S.C. §§ 4, 241, and 242.

Plaintiff also alleges the existence of multiple conspiracies throughout the course of his complaint. (See Compl. ¶¶ 55, 61-62, 72, 87, 98, 101-02, 106-07, 122, 125-26, 128, 130-35, 139, 142-43.) However, plaintiff pleads absolutely no facts to establish the existence of a conspiracy; rather, the allegations of conspiracy are conclusory and based almost exclusively upon plaintiff's subjective beliefs and opinions. Thus, the complaint does not contain sufficient factual matter to state any claim for conspiracy that is plausible on its face. See Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 570.

As noted above, the court is required to liberally construe a *pro se* complaint. Cause One of plaintiff's complaint, although it was brought pursuant to 18 U.S.C. §§ 4, 241, and 242, could possibly be construed as alleging a claim of excessive force against defendant Daniel Garden. (See Compl. ¶ 69.) However, Cause One of the complaint consists of legal terms and conclusory allegations. Plaintiff alleges that, "on March 27, 2009, [he] was physically assaulted, battered and forced into a prison by Daniel Garden ["Garden"] and others posing as deputies for the Office of Sheriff of Craven County, North Carolina who failed to show evidence of their authority." (Id.) Plaintiff makes no other allegations regarding the 27 March 2009 altercation.[5] He has provided no specific facts regarding what Garden and "others posing as deputies" actually did to him or how Garden's actions harmed him. (Id.) Thus, the conclusory allegations

---

[5] Plaintiff does make another general allegation that he "has been assaulted, battered, handcuffed and imprisoned unlawfully, [and] deprived of medical attention[,]" but he does not specifically relate this statement to a particular date or to a particular defendant. (Compl. ¶ 65; see also id. ¶ 143.)

9

of Cause One fall short of the required specific factual allegations necessary to plausibly support a claim for excessive force in violation of the Eighth Amendment as against Garden. See Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 570.

Plaintiff also mentions the fact that he suffers from Type I Diabetes several times throughout the course of his complaint. (See Compl. ¶¶ 55, 135, 143, 144, 145, 162.) While the court takes plaintiff's medical needs seriously, the court notes that many of plaintiff's allegations regarding this issue relate to future injuries that he might suffer if his request for injunctive relief is denied. The court has been able to discern only one potentially viable claim relating to the denial of medical attention. Plaintiff asserts that defendant Judge Joyce A. Hamilton ("Hamilton"), "with full knowledge of Petitioner Steven-Glenn's Type I diabetic health condition, ordered Steven-Glenn to prison for 60 days on a civil contempt charge for failing to pay child support . . . [,] disallowing him the necessary care to sustain his life in prison." (Id. ¶ 135.) It appears that plaintiff spent one day in prison following Hamilton's order. (Id.)

Plaintiff's claim is without merit because Hamilton has absolute judicial immunity against suits for monetary damages. See, e.g., Stump v. Sparkman, 435 U.S. 349, 356 (1978); see also Green v. North Carolina, No. 4:08-CV-135-H, 2010 WL 3743767, at *3 (E.D.N.C. Sept. 21, 2010) (citing Dean v. Shirer, 547 F.2d 227, 231 (4th Cir. 1976) (a judge may not be attacked for exercising judicial authority, even if done improperly)). To the extent that plaintiff's claim is based on Hamilton's failure to take and/or file the proper oath, the court has already found this argument to be without merit.[6]

---

[6] Plaintiff is also attempting to make other claims which arise out of actions taken by superior court judges, clerks of court, grand jurors, and prosecutors within the scope of their jurisdiction. These defendants enjoy absolute immunity against suits for monetary damages under 42 U.S.C. § 1983 and statutes prohibiting conspiracies to restrict civil rights and penalizing neglect of rights. See Imbler v. Pachtman, 424 U.S. 409, 423 n. 20, 427 (1976)

10

The court also notes that plaintiff does not make any specific factual allegations regarding defendants Craven County, Davie County, Iredell County and Jones County. He merely concludes that each county is "posing" as "a de jure government." (Compl. ¶¶ 42-46.) He also makes a confusing statement that Craven County is "traded as Jerry Waddle[.]" (Id. ¶ 46.) It is possible that paragraph 142 of the complaint might also somehow relate to the county defendants, but the court cannot make sense of plainitiff's rambling factual allegations or determine how they relate to the conclusory claim set forth by plaintiff.

Accordingly, after thoroughly considering all of plaintiff's claims, the court finds that the complaint is frivolous and fails to state any claim on which relief may be granted. As a result, the court dismisses plaintiff's action.

On 5 November 2010, plaintiff filed a motion for injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure. As with plaintiff's prior motion for a temporary restraining order (DE ## 2, 5), the motion lacks merit and is denied. See Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008); Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 345-46 (4th Cir. 2009), vacated on other grounds, 130 S. Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (*per curiam*).

### III. CONCLUSION

Plaintiff's request for in forma pauperis status (DE # 8) is GRANTED. Plaintiff's motion for preliminary injunction (DE # 6) is DENIED. The complaint is hereby DISMISSED. As a

---

(prosecutors and grand jurors); Stump, 435 U.S. at 356 (judges); Green, 2010 WL 3743767, at *3 (judges and clerks of court); Travis v. Miller, 226 F. Supp. 2d 663, 667 (E.D. Pa. 2002) (finding, in a suit brought under 42 U.S.C. §§ 1983, 1985, and 1986, that "[j]udicial [d]efendants enjoy absolute immunity against suits for monetary damages regarding their judicial acts"). As a result, the claims that plaintiff has made against these defendants are subject to dismissal.

result, plaintiff's request to have the United States Marshal serve the complaint and his request for an extension of time to serve the defendants (DE # 8) are DENIED AS MOOT. The Clerk is directed to close the case.

This 8 April 2011.

W. Earl Britt
Senior U.S. District Judge